# OPTION LEGAL                     PAYMENT SCHEDULE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total Amount of Debt** | | | $31,698.00 | | **Estimated Settlements:** | | $13,313.16 |
| **Service Cost Percentage** | | | 17% | | | | |
| **Estimated Total Fees & Settlements** | | | $24,494.42 | | **TOTAL ESTIMATED SAVINGS** | | $7,203.58 |

| Month in Program | Retainer Fee | Service Cost | Settlement Reserves | Legal Admin Fee | Banking Fees | Total Draft | Draft Due Date |
|---|---|---|---|---|---|---|---|
| 1 | $150.00 | $244.94 | $15.42 | $89.00 | $10.95 | $510.31 | 6/10/2019 |
| 2 | $150.00 | $244.94 | $15.42 | $89.00 | $10.95 | $510.31 | 7/10/2019 |
| 3 | $100.00 | $244.94 | $65.42 | $89.00 | $10.95 | $510.31 | 8/10/2019 |
| 4 | $100.00 | $244.94 | $65.42 | $89.00 | $10.95 | $510.31 | 9/10/2019 |
| 5 | $100.00 | $244.94 | $65.42 | $89.00 | $10.95 | $510.31 | 10/10/2019 |
| 6 | $100.00 | $244.94 | $65.42 | $89.00 | $10.95 | $510.31 | 11/10/2019 |
| 7 | $100.00 | $244.94 | $65.42 | $89.00 | $10.95 | $510.31 | 12/10/2019 |
| 8 | $100.00 | $244.94 | $65.42 | $89.00 | $10.95 | $510.31 | 1/10/2020 |
| 9 | $95.00 | $244.94 | $70.42 | $89.00 | $10.95 | $510.31 | 2/10/2020 |
| 10 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 3/10/2020 |
| 11 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 4/10/2020 |
| 12 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 5/10/2020 |
| 13 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 6/10/2020 |
| 14 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 7/10/2020 |
| 15 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 8/10/2020 |
| 16 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 9/10/2020 |
| 17 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 10/10/2020 |
| 18 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 11/10/2020 |
| 19 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 12/10/2020 |
| 20 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 1/10/2021 |
| 21 | | $244.94 | $165.42 | $89.00 | $10.95 | $510.31 | 2/10/2021 |
| 22 | | $244.92 | $165.44 | $89.00 | $10.95 | $510.31 | 3/10/2021 |
| 23 | | | $410.36 | $89.00 | $10.95 | $510.31 | 4/10/2021 |
| 24 | | | $410.36 | $89.00 | $10.95 | $510.31 | 5/10/2021 |
| 25 | | | $410.36 | $89.00 | $10.95 | $510.31 | 6/10/2021 |
| 26 | | | $410.36 | $89.00 | $10.95 | $510.31 | 7/10/2021 |
| 27 | | | $410.36 | $89.00 | $10.95 | $510.31 | 8/10/2021 |
| 28 | | | $410.36 | $89.00 | $10.95 | $510.31 | 9/10/2021 |
| 29 | | | $410.36 | $89.00 | $10.95 | $510.31 | 10/10/2021 |
| 30 | | | $410.36 | $89.00 | $10.95 | $510.31 | 11/10/2021 |
| 31 | | | $410.36 | $89.00 | $10.95 | $510.31 | 12/10/2021 |
| 32 | | | $410.36 | $89.00 | $10.95 | $510.31 | 1/10/2022 |
| 33 | | | $410.36 | $89.00 | $10.95 | $510.31 | 2/10/2022 |
| 34 | | | $410.36 | $89.00 | $10.95 | $510.31 | 3/10/2022 |
| 35 | | | $410.36 | $89.00 | $10.95 | $510.31 | 4/10/2022 |
| 36 | | | $410.36 | $89.00 | $10.95 | $510.31 | 5/10/2022 |
| 37 | | | $410.36 | $89.00 | $10.95 | $510.31 | 6/10/2022 |
| 38 | | | $410.36 | $89.00 | $10.95 | $510.31 | 7/10/2022 |
| 39 | | | $410.36 | $89.00 | $10.95 | $510.31 | 8/10/2022 |
| 40 | | | $410.36 | $89.00 | $10.95 | $510.31 | 9/10/2022 |
| 41 | | | $410.36 | $89.00 | $10.95 | $510.31 | 10/10/2022 |
| 42 | | | $410.36 | $89.00 | $10.95 | $510.31 | 11/10/2022 |
| 43 | | | $410.36 | $89.00 | $10.95 | $510.31 | 12/10/2022 |
| 44 | | | $410.36 | $89.00 | $10.95 | $510.31 | 1/10/2023 |
| 45 | | | $410.36 | $89.00 | $10.95 | $510.31 | 2/10/2023 |
| 46 | | | $410.36 | $89.00 | $10.95 | $510.31 | 3/10/2023 |
| 47 | | | $410.36 | $89.00 | $10.95 | $510.31 | 4/10/2023 |
| 48 | | | $409.80 | $89.00 | $10.95 | $509.85 | 5/10/2023 |
| 49 | | | | | | | |
| 50 | | | | | | | |
| 51 | | | | | | | |
| 52 | | | | | | | |

*Settlement Reserves above is only an estimate of the amount needed for settlement.*

Client Signature _____  SIGN HERE    Co-Client Signature _____  SIGN HERE

Print Name _____    Print Name _____

iv

## Account Information Authorization

I authorize Option 1 or its designee to provide my bank account information set forth below to the third party dedicated account holder in order to facilitate the establishment of my Dedicated Account.

Name on Account (Please Print): Daryl Canfieldjr

Please transfer payments directly from my Checking account, Savings account, or Other account.

Bank Name: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Bank Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

City: Spring Hill          St: TN   Zip: 37174

Bank Phone #: ▮▮▮▮▮▮▮▮▮▮

**Routing # |▮▮▮▮▮▮▮▮▮▮▮▮|  Account # ▮▮▮▮▮▮▮▮▮▮

*Routing numbers are always 9 digits long and always start with 0, 1, 2, or 3.

_____          Daryl Canfieldjr _____          5-11-19
Authorized Signature on Account          Printed Name          Date

Attach Voided Check or Savings Deposit Slip Here



DARYL T CANFIELD                                              985
                                                             13-31/420
Pay to the
Order of_____   $
_____ Dollars
For_____

# OPTION**LEGAL**    ELECTRONIC COMMUNICATION VERIFICATION

## ELECTRONIC COMMUNICATION VERIFICATION

Please print your email address on the line below:

████████████ _____

You will receive an email of the Letter of Engagement and other documents executed today in the next three (3) business days. In case you do not receive an emailed copy, due to faulty address or lack of email address provided above, you will still receive copies of these documents with your Welcome Package. The Welcome Package will be mailed to you once your first payment has cleared.

Please initial here to indicate you understand the above terms of email delivery:

INITIAL HERE ▷    Initial: _____ _____

# OPTION LEGAL

## HARDSHIP AND BUDGET INFORMATION

## HARDSHIP AND BUDGET INFORMATION

### Reason for Hardship

- Temporary Loss of Work
- Loss of Job
- Medical Problems
- Personal Injury
- Divorce

- Company Reduced Hours
- Pay Cut
- Disability
- Loss of Spouses Income
- ☑ Other: _____

Please Briefly Explain Hardship: High interest - High interest

### BUDGET ANALYSIS

(All information should be on a monthly basis)

| | |
|---|---|
| Client Net Monthly Income | $ 5,000.00 |
| Co-Client Net Monthly Income | $ 0.00 |
| Total Income | $ 5,000.00 |

Funds Available $ 2,500.00

| | | | | |
|---|---|---|---|---|
| Mortgage/Rent | $ 500.00 | Household Items | $ | |
| Home Owners Insurance | $ | Clothing | $ | |
| Life Insurance | $ | Laundry/Dry Cleaning | $ | |
| Medical Care | $ | Utilities | $ | |
| Child Care / Support / Alimony | $ | Telephone | $ | |
| Cable TV / Satellite | $ | Auto Loans | $ | |
| Charity / Donations | $ | Auto Other | $ | |
| Entertainment | $ | Auto Insurance | $ | |
| Gym / Health | $ | Education | $ | |
| Personal Care | $ | Student Loans | $ 2,000.00 | |
| Back Taxes | $ | Misc. / Other | | |
| Food | | Total Expenses | $ 2,500.00 | |

**By executing this agreement, you are representing that you have considered these other options and further, that you have provided us with accurate information, including your financial information and the state of your financial hardship as documented in your hardship statement.**

vi

### Bankruptcy and Debt Negotiation

Option 1 is a full-service debt resolution law firm which provides services including debt negotiation and restructuring and bankruptcy services. The following provides information about these approaches to debt resolution for your review. Clients should fully understand the advantages and disadvantages of each to make an informed decision.

### Bankruptcy

Bankruptcy will usually discharge your unsecured debt and your creditors are not permitted to contact you once you have filed with the court. There are two kinds of bankruptcy: Chapter 13 bankruptcy where you are generally able to keep property that is mortgaged, such as your house or car, and are expected to repay debts in three to five years, and Chapter 7 bankruptcy where you must give up all non-exempt property and assets that you own in exchange for a discharge of most debt. Bankruptcy may be appropriate if you have pending foreclosures, collection litigation or wage garnishments; however, you will generally be unable to establish credit for up to ten years. In 2005, the bankruptcy law was changed to make it more difficult for some consumers to file Chapter 7 bankruptcy based on a financial means test and credit counseling requirements that may require a repayment of some of your debt.

Option 1 is a debt relief agency under the United States Bankruptcy Code Sections 527 (a) and (b), and we are required to provide the following information and notice:

A debt relief agency providing bankruptcy assistance to an assisted person shall provide—

(1) The written notice required under section 342(b) (1); and

(2) To the extent not covered in the written notice described in paragraph (1), and not later than 3 business days after the first date on which a debt relief agency first offers to provide any bankruptcy assistance services to an assisted person, a clear and conspicuous written notice advising assisted persons that—

(A) All information that the assisted person is required to provide with a petition and thereafter during a case under this title is required to be complete, accurate, and truthful;

(B) All assets and all liabilities are required to be completely and accurately disclosed in the documents filed to commence the case, and the replacement value of each asset as defined in section 506 must be stated in those documents where requested after reasonable inquiry to establish such value;

(C) Current monthly income, the amounts specified in section 707(b) (2), and, in a case under chapter 13 of this title, disposable income (determined in accordance with section 707(b) (2)), are required to be stated after reasonable inquiry; and

(D) Information that an assisted person provides during their case may be audited pursuant to this title, and that failure to provide such information may result in dismissal of the case under this title or other sanction, including a criminal sanction.

### IMPORTANT INFORMATION ABOUT BANKRUPTCY ASSISTANCE SERVICES FROM AN ATTORNEY OR BANKRUPTCY PETITION PREPARER

If you decide to seek bankruptcy relief, you can represent yourself, you can hire an attorney to represent you, or you can get help in some localities from a bankruptcy petition preparer who is not an attorney. THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST. Ask to see the contract before you hire anyone.

The following information will help you to understand what must be done in a routine bankruptcy case and will help you to evaluate how much assistance you may need. Although bankruptcy can be complex, many cases are routine.

Before filing a bankruptcy case, either you or your attorney should analyze your eligibility for different

forms of debt relief available under the Bankruptcy Code and which form of relief is most likely to be beneficial for you. Be sure you understand the relief you can obtain and its limitations. To file a bankruptcy case, documents called a Petition, Schedules and Statement of Financial Affairs, as well as in some cases a Statement of Intention need to be prepared correctly and filed with the bankruptcy court. You will have to pay a filing fee to the bankruptcy court. Once your case starts, you will have to attend the required first meeting of creditors where you may be questioned by a court official called a 'trustee' and by creditors.

If you choose to file a chapter 7 case, you may be asked by a creditor to reaffirm a debt. You may want help deciding whether to do so. A creditor is not permitted to coerce you into reaffirming your debts.

If you choose to file a chapter 13 case in which you repay your creditors what you can afford over 3 to 5 years, you may also want help with the preparation of your chapter 13 plan and with the confirmation hearing on your plan which will take place before a bankruptcy judge.

If you select another type of relief under the Bankruptcy Code (other than chapter 7 or chapter 13), you will want to find out what should be done from someone familiar with that type of relief.

Your bankruptcy case may also involve litigation. You are generally permitted to represent yourself in litigation in bankruptcy court, but only attorneys, not bankruptcy petition preparers, can give you legal advice.

### Debt Negotiation

Debt Negotiation is a process where the law firm, based on your specific circumstances, develops a plan to manage your debt resolution with your creditors. In general terms, it is a process of negotiating with your creditors for a lower balance or forgiveness of debt, a reduced interest rate, a reduced monthly payment or other restructuring alternatives. To be successful in debt negotiation, you need to have sufficient cash flow to meet your living expenses each month and provide some funds towards resolution of your debt.

If appropriate for your situation, Option 1 will contact your unsecured creditors in writing to notify them that you are represented by the law firm and that we are advising you as to all alternatives for debt resolution. As you have indicated in your compliance review, you prefer Option 1 to attempt debt negotiation as an alternative to bankruptcy or other options. However, if your financial circumstances change, we will advise you as to other debt resolution alternatives, including those outlined above, so you can make an informed decision based on our advice.

If you have any questions regarding the above options, please contact us for further explanation. If you are ready to proceed, sign below your acknowledgement that you have reviewed the available debt resolution options and have determined that debt negotiation by Option 1 is your preference, subject to your ability to request a different alternative if your circumstances change in the future.

**I have reviewed all debt resolution options available to me including doing nothing, filing for bankruptcy and consumer credit counseling, and elect to pursue debt negotiation services with Option 1, subject to my ability to request other alternatives, based on changes in my financial circumstances.**

SIGN HERE ➡

_____       5-11-19
Signature of Client           Date

SIGN HERE ➡

_____       _____
Signature of Co-Client        Date

**OPTIONLEGAL**                                     **CREDIT UNION DISCLAIMER**

## DISCLAIMER – SETTLEMENT OF CREDIT UNION ACCOUNTS

This confirms my/our understanding and acknowledgement that, in the experience of Option 1, credit union debt accounts are often resolved for higher settlement amounts, meaning that such debts may cost me/us more to settle and result in smaller reductions from the debt amounts at the time of enrollment. For this reason, credit union debt accounts are excluded from Option 1's Performance Standard in Section 2 of the Agreement and Option 1 provides no assurance that such debts will be settled for any amount.

I/we acknowledge that my current credit union account(s) that are to be enrolled into the program are NOT cross-collateralized with any other credit union obligation(s). I/we understand that in the event it is later determined that any enrolled credit union account is cross-collateralized with any other credit union obligation that any enrolled credit union account(s) would be removed from the program and become my sole obligation to be resolve in the manner I see fit.

Further, I/we acknowledge that Option 1 would thereby have no obligations to represent me regarding these accounts whether ongoing or in the future.

SIGN HERE ⟵                                       SIGN HERE ⟵

_____                  _____
Client Signature                                  Co-Client Signature

Daryl Canfieldjr          5-11-19                _____    _____
_____   _____
Client Name               Date                    Co-Client Name       Date

**viiii**

# OPTION1LEGAL

## STUDENT LOAN DISCLAIMER

# DISCLAIMER – SETTLEMENT OF PRIVATE STUDENT LOAN ACCOUNTS

This confirms my/our understanding and acknowledgement that, in Option 1 Legal's experience, private student loan accounts may cost me/us more to settle and result in a smaller reduction from the debts at the time of enrollment. For this reason, private student loan accounts are excluded from Option 1 Legal Performance Standard in Section 2 of the Agreement and Option 1 Legal provides no assurance that such debts will be settled for any amount. I/we acknowledge that my private student loan account(s) that are to be enrolled into the program are NOT cross-collateralized with any other obligations with the same lending institution, are unsecured, and are not federally-backed loans. I/we understand that in the event it is later determined that any enrolled private student loan account does not meet the criteria above, Option 1 Legal shall have the right to remove such account from the program and the removed account shall become my sole obligation to be resolved in the manner I see fit. I/we acknowledge that Option 1 Legal would thereby have no obligations to represent me regarding any removed accounts whether ongoing or in the future.

Furthermore, I/we understand private student loan accounts tend to have significantly higher average enrolled balances than those of traditional unsecured credit obligations. Accordingly, I/we understand that private student loan accounts may require a longer period of time to resolve when compared to my/our other enrolled accounts.

SIGN HERE

SIGN HERE

_____          _____
Client Signature                    Co-Client Signature

Daryl Canfieldjr        5-11-19       _____    _____
_____          _____    _____
Client Name             Date        Co-Client Name        Date

x

**OPTION1LEGAL**        **COMMUNICATION AUTHORIZATION**

## AUTHORIZATION TO COMMUNICATE AND NEGOTIATE WITH CREDITORS AND COLLECTION AGENCIES

I (We) authorize Option 1 Legal. ("LAW FIRM") including its agents and representatives, to take the following actions:

1. Communicate with my (our) creditors, including but not limited to any agent, representative or third-party collection agency or law firm, and discuss any and all details of my (our) financial situation, all for the purpose of negotiating settlements of my (our) debt obligations; and

2. Obtain records, debt validations, credit reports and support for the debts allegedly owed on my (our) behalf.

I (we) affirm that all of the information that I (we) have or will provide to LAW FIRM is accurate, timely and correct. I expressly acknowledge that 1) LAW FIRM is a law firm that has been retained to provide me with legal advice and/or representation.

The recipient of this Authorization, whether by original, photo copy, facsimile or electronic copy is specifically authorized and instructed by the undersigned party(ies) to contact or receive communications from LAW FIRM or employees, regarding any of the purposes listed herein.

Client Name: Daryl Canfieldjr      Co-Client Name: _____

Date: 5-11-19      Date: _____

SSN#: ████████      SSN#: _____

Signature _____ [SIGN HERE]      Signature: _____ [SIGN HERE]

# OPTION1LEGAL

POWER OF ATTORNEY

## POWER OF ATTORNEY

I/We, _____ Daryl Canfieldjr _____, _____

Located at_____ ███████████ _____

In the City of_____ ███████████ _____, State of ██ Zip ███████

hereby appoint the Option 1 Legal ("Option 1") as my/our attorney-at-law to do the acts described in this Power of Attorney. Option 1 (and/or its designees) is hereby authorized to act as my/our attorney and to fully represent me/us in any litigation or negotiation of the modification, reduction, settlement, and payment on any and all debts allegedly due and owning in my/our name. Litigation representation includes attendance at required court hearings, if applicable.

I/We authorize Option 1 to request and receive confidential credit and account information from creditors, credit bureaus, collection agencies, creditor attorneys, or any other third parties who may be in possession of such information and would be viewed by me/us personally.

This Power of Attorney revokes all earlier Power of Attorney given by, or on behalf of, me/us relating to all communications of creditors' claims and shall be effective and binding on me/us until revoked by an instrument in writing executed by me/us. I/We further authorize Option 1 to release a copy of this Power of Attorney to my/our creditors or their agents. A copy of this Power of Attorney shall be deemed as effective as an original.

Executed on _5-11-19_

**SIGN HERE**

Client Signature

**SIGN HERE**

_____
Co-Client Signature

_____
Client Social Security Number

_____
Co-Client Social Security Number

State of _Tennessee_ County of _Maury_

The foregoing instrument was acknowledged by me this _11_ day of _May_, 20_19_

by: _Daryl Canfield_ who is/are personally known by me or who

has/have produced: _Tennessee License_ as identification and who did not take an oath.

Notary Public _Deborah Seloky_

xii

Case 1:20-ap-90110   Doc 1-1   Filed 08/03/20   Entered 08/03/20 10:17:52   Desc
Exhibit    Page 10 of 34



# DEDICATED ACCOUNT AGREEMENT AND APPLICATION

**I.** This Dedicated Account Agreement and Application ("Agreement") contains the terms, conditions, and disclosures that apply to your dedicated account ("Account"). By signing this Agreement or using your Account, you agree that this Agreement shall apply; and you agree to abide by all of the terms and conditions set forth herein, including the requirement to arbitrate any dispute with Global Client Solutions, LLC ("Global") according to the terms of the "ARBITRATION OF DISPUTE" provision in paragraph XVII on page 2 of this Agreement. You are directed to read the "ARBITRATION OF DISPUTE" provision in paragraph XVII on page 2 of this Agreement carefully, as you are giving up your right to bring a lawsuit before a judge or jury in a court of law. If you have any questions that you do not believe are addressed in this Agreement, you can and should call, email, or write Global at the number or addresses shown at the end of this Agreement. Please review this Agreement carefully and keep it with your other important records. In this Agreement, the words, "I", "me", "mine", "my", "you" and "your" mean you and any other party who you authorize to use your Account.

**II. Purpose, Nature and Use of the Account:** Your Account is a dedicated account that you can use in connection with the debt settlement program you have undertaken. Global is not a party to your debt settlement program and does not participate in the negotiation of your debts. In general, you will be making periodic deposits to your Account from your primary bank account, and you will be periodically disbursing funds from your Account to repay your debts and the costs associated with your Account and your debt settlement program. Your Account is a Federal Deposit Insurance Corporation ("FDIC") insured sub-account within a master custodial account maintained at a bank designated or selected by Global. The bank is not a party to your debt settlement program and does not participate in the negotiation of your debts, and is an intended third-party beneficiary of this Agreement, including the " ARBITRATION OF DISPUTE" provision in paragraph XVII on page 2 of this Agreement. Additionally you authorize Global to transfer your Account to another FDIC insured institution under the existing terms. Global will provide written notice to you of such change. Any such notice, and any other written notice that is provided for in this Agreement, will be sent to you at either the physical address you have provided in the application portion of this Agreement and/or the email address you establish with Global. If an email address is not provided to Global, all notices will be sent to you at the physical address you provided in the application portion of this Agreement. Your Account may not be used for any illegal purpose.

**III. Passcodes / Passwords:** You will be provided with a four -digit passcode (your "Passcode") that will enable you to access your Account via the telephone and to identify yourself when contacting a customer support representative. You will also be provided with an initial Internet password (your "Password") that will enable you to access your Account via the Internet. You may change your Password at any time for security purposes and you are encouraged to do so from time to time. You are responsible for the protection and use of your Passcode and Password. Do not disclose your Passcode or Password to anyone who does not have your permission to access your Account.

**IV. Telephonic / Electronic Communications:** You authorize Global to accept and act upon any instruction received from you or authorized by you under this Agreement concerning your Account, where you have communicated that instruction or authorization by telephone, facsimile, email or other electronic means using a telephone keypad or computer. Use of your Passcode, Password or any other form of identification designated by you in any transaction constitutes and will be accepted as your electronic signature, as that term is used in the federal Electronic Signatures in Global and National Commerce Act and other applicable laws.

**V. Authorizing and Initiating Transactions:** In this Agreement you authorize certain transactions involving your Account. Unless you direct otherwise in writing, Global may also act on those instructions that you conveyed to your Sponsor, as defined in the application portion of this Agreement, and such instructions may be acted on without further confirmation. From time to time, you may change those instructions and/or give other instructions to initiate deposits to or disbursements from your Account by contacting Global's Customer Support. In any event, you must always provide a reasonable period of time to act on your instructions. All deposits to your Account will be authorized and initiated pursuant to your instructions, and all disbursements from your Account will be authorized and

initiated pursuant to your instructions provided your Account contains sufficient funds to cover the amount of the disbursement. However, neither Global, nor any service provider to Global shall be responsible for determining when a payment is actually due, nor shall they be responsible for determining whether a payment is for the correct amount or otherwise proper. Global's sole obligation in this regard will be to execute your payment instructions in a commercially reasonable manner as soon as practical after receipt of such instructions. Global shall not be responsible for any late payment fee, penalty or other charge levied by any of your creditors, for any failure of any of your creditors to accept a proposal for settlement or honor a settlement; or for any other adverse action taken by your creditor or any other party. Global shall not be liable for any consequences or damages you may claim resulting from Global acting on your instructions.

**VI. Fees and Charges:** The "SCHEDULE OF FEES AND CHARGES" identifies the fees and charges you are obligated to pay Global in connection with this Agreement and your Account, and you agree that these fees and charges may be deducted directly from your Account. The fees and charges in the "SCHEDULE OF FEES AND CHARGES" are the only fees associated with Global's services and your Account. The Monthly Service Charge for the first month in which your Account is established will not be prorated and will be deemed earned in full as of the day the Account is established, e.g., if your Account is established on the 1 5th day of a month, the Monthly Service Charge for such month shall be earned as of that day. Thereafter, the Monthly Service Charge will be deemed earned in full on the first day of each calendar month during which your Account remains open. Other fees will be deemed earned at the time of the transaction or the event that gives rise to the fee. You expressly acknowledge that Global may increase the fees and charges associated with your Account at any time, and you agree that you will be provided with written notice at least thirty (30) days' prior to such increase. Global shall not be responsible for any other fees and/or charges that you may incur arising from or related to your debt settlement program.

**VII. Termination of Agreement / Account Closure:** You may terminate this Agreement and close your Account at any time by sending a written notice to Global's Customer Support. The written notice must provide Global with the following information:

1. Your full name and current address;
2. Your Account number;
3. The date of the request; and
4. Your request to close your Account.

Please provide Global with sufficient time to process the request. In addition, Global may suspend, cancel or terminate this Agreement and your Account at any time without notice for inactivity, or if your Program has been terminated or is no longer being managed, if your Account is improperly maintained or used, or if you otherwise violate any provision of this Agreement. If this Agreement is terminated for any reason, the collected balance in your Account will be sent to you by check within a reasonable period of time.

**VIII. Monthly Statements:** You will receive your first monthly statement by mail showing your Account activity and balance by mail. Thereafter, monthly statements will be available online, and may be accessed using your login information and Password. Should you desire to continue receiving a paper statement via the United States Postal Service, please contact Global's Customer Support and make a request to receive mailed paper statements. You may obtain balance and transaction information by using your Passcode to access your Account over the telephone, by using your Password to log into Global's website, or by calling Global's Customer Support. You agree to review each of your statements carefully and to report any erroneous, improper, or unauthorized transactions promptly.

**IX. Non-Interest Account:** Your Account is a non -interest bearing Account.

**X. Unauthorized Transactions and Customer Responsibility:** You should never share your Passcode or Password(s) with anyone and should keep your Account information and papers in a secure place. If you believe someone has transferred or may transfer money from your Account without your permission, contact Global's Customer Support immediately.

Initials

**XI. FDIC Insurance:** The funds in your Account will be FDIC insured up to a maximum of $250,000.00. The insured amount may increase or decrease and is subject to limits set and reset by the FDIC from time to time.

**XII. Incomplete Transactions:** Neither Global nor any service provider to Global shall be liable for failing to complete a transaction due to insufficient funds in your Account; or if circumstances beyond their control prevent the completion of the transaction, including, without limitation, the acts or omissions of any ACH, check or other processor, the National Automated Clearing House Association, the Federal Reserve System, any bank, or the directive of any regulatory authority.

**XIII. Error Resolution Procedures:** In the event of potential errors or questions concerning specific transactions involving your Account, you must call or write Global's Customer Support no later than sixty (60) days after the transaction in question appears on your monthly statement. Furthermore, at the very minimum you must provide Global with the following information:

1. Your full name and Account number;
2. The date and amount of the transaction;
3. The type of transaction and a description of the suspected error (please explain as clearly as possible why you believe there is an error or why you need additional information); and
4. The dollar amount of the suspected error.

If you provide the information over the phone, you may be asked and required to provide it again in writing within ten (10) business days. Global will inform you of the results of the investigation of the suspected error within ten (10) business days after you submit the information and any error will be promptly corrected. However, if Global requires more time to investigate the suspected error, it may take up to an additional thirty (30) days to complete the investigation. If Global determines that there is no error, you will be provided with a written explanation within three (3) business days of such determination; and you may ask for and receive copies of the documents used in making any such determination.

**XIV. Creditor Disputes:** _You understand and agree that Global is not a party to your debt settlement program, and does not participate in the negotiation of your debts. This Agreement is separate and independent of any contractual obligations you may have with your creditors or debt settlement provider. Accordingly, you hereby expressly acknowledge that Global does not have any involvement in or responsibilities of any kind or nature with respect to your contractual agreement with your creditors or your debt settlement provider, your debt settlement program or the results that you may or may not achieve from your participation in a debt settlement program._ Furthermore, you hereby expressly acknowledge that any representation, statement, or obligation made by your debt settlement provider or made in connection with your debt settlement program is not made on Global's behalf, and does not and cannot bind Global. Finally, you expressly acknowledge that Global shall not be liable for any actions taken by, or conduct of, your debt settlement provider in connection with your debt settlement program. You hereby agree to indemnify Global, and hold Global, its parent and subsidiaries, directors, officers, shareholders, and employees harmless from any damages (including attorneys' fees) resulting from the breach of any of the above warranties._

**XV. Garnishment Acknowledgement:** In the event that a creditor of yours moves to garnish funds in your Account, _you expressly acknowledge that Global will answer the garnishment and comply with any writ issued by the Court in accordance with the applicable state law. Furthermore, you expressly acknowledge that Global will not be responsible for challenging or raising a defense to the garnishment on your behalf._ You specifically agree to indemnify and hold Global harmless from any loss, liability, obligation, damage, cost and expense resulting from a creditor's attempt to garnish and/or hold Global liable for any judgment against you.

**XVI. Governing Law:** This Agreement shall be governed by the laws of the state where you reside, except that the state's rules or statutes governing arbitration procedures shall not apply. If any part of this Agreement is declared void or unenforceable, such provision(s) shall be deemed severed from this Agreement, and the remainder of this Agreement shall remain in full force and effect. This Agreement may be modified to the extent necessary to give such force and effect to the remaining provisions. No delay or forbearance in the strict observance or performance of any provision of this Agreement, nor any failure to exercise a right or remedy hereunder, shall be construed as a waiver of such performance, right, or remedy, as the case may be.

**XVII. ARBITRATION OF DISPUTE – IMPORTANT NOTICE WAIVING YOUR RIGHT TO BRING A CLAIM BEFORE A JUDGE OR JURY IN COURT:** In the event of any controversy between the parties, including, but not limited, to any claim, dispute, suit, demand, cross claim, counterclaim, or third party complaint (whether contractual, statutory, in tort, or otherwise) arising out of or relating to this Agreement or its performance, breach, termination, enforcement, interpretation or validity, including the determination of the validity, scope or applicability of this provision to arbitrate, must be resolved by binding and confidential arbitration. This arbitration provision is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and not by any state rule or statute governing arbitration. Arbitration under this provision shall be conducted in either the country in which the consumer resides or the closest metropolitan county. **THE PARTIES AGREE THAT ARBITRATION WILL BE BEFORE A SINGLE ARBITRATOR ON AN INDIVIDUAL BASIS AND NOT AS A CLASS OR MASS ACTION. FURTHERMORE, THE PARTIES AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS OF MORE THAN ONE PERSON'S CLAIMS.** The Arbitration will be administered by: The Judicial Arbitration Mediation Services ("JAMS"), 1920 Main Street, Suite 300, Irvine, CA 92614 ( www.jamsadr.com); or the American Arbitration Association ("AAA"), 335 Madison Ave., Floor 10, New York, NY 10017-4605 ( www.adr.org); or another nationally known consumer arbitration service on which the parties will agree to use. The Arbitration will be administered according to the arbitration service's fee schedule and the service's current applicable rules and procedures except: 1) that the parties expressly waive the applicability of any rule governing class or mass action; 2) that the parties agree to have an in-person final hearing, and 3) that the parties agree that any specific arbitration procedure provided for herein will apply to the arbitration proceeding. The arbitrator – who must be either a retired judge or an experienced arbitrator – must be neutral and independent and must comply with the selected arbitration service's code of ethics. Additionally, the arbitrator will be guided by the Federal Rules of Evidence and 'governing substantive' law. The arbitrator's award is final and binding on all parties. The parties may move to confirm or vacate the award in a court of competent jurisdiction in accordance with the provisions of the FAA. The parties will bear their own attorneys' fees unless such fees are expressly provided for by applicable law. If the arbitrator determines that reasonable attorneys' fees are to be awarded under applicable law, the parties agree that the arbitrator will al so determine the amount of reasonable attorneys' fees to be awarded. In the event a party fails to proceed with arbitration, fails to comply with the arbitrator's award, or unsuccessfully challenges the arbitrator's award, the other party is entitled to any costs and expenses incurred, including a reasonable attorneys' fee for having to compel arbitration or defend or enforce the award.

_What is Binding Arbitration? Binding Arbitration is an alternative dispute resolution process where both parties give up certain legal rights to bring a claim in court. Binding Arbitration means: (1) that both parties give up their right to a trial in court before a judge or jury; (2) that both parties give up the right to appeal from the arbitrator's ruling except for a narrow range of appealable issues expressly provided for in the FAA, 9 U.S.C. § 16; and (3) that discovery may be severely limited by the arbitrator, and if the arbitrator allows full discovery, the arbitrator may not exceed the discovery limitations provided by the Federal Rules of Civil Procedure. I UNDERSTAND THAT I MAY OPT-OUT OF THE TERMS OF THE "ARBITRATION OF DISPUTE" PROVISION BY PROVIDING GLOBAL NOTICE IN WRITING WITHIN THIRTY (30) DAYS OF SIGNING THE AGREEMENT. I understand that the notice must be sent to Global's Customer Support using certified mail or sent by electronic mail to the addresses provided in this Agreement. If I do not timely opt-out, I agree to the terms of the "ARBITRATION OF DISPUTE" provision._

_I acknowledge that I have read, understood, and agree to abide by the terms of the arbitration provision set forth above, and fully understand that arbitration replaces the right of either party to go to court and replaces the right to have a judge or jury hear or decide either party's dispute or claims._

SIGNATURE: _[signature]_ 

Case 1:20-ap-90110    Doc 1-1    Filed 08/03/20    Entered 08/03/20 10:17:52    Desc
Exhibit    Page 12 of 34

**XVIII. PRIVACY POLICY:** Global may collect personal information that you provide: (1) in the application portion of this Agreement; (2) in any updated information you may provide from time to time; and (3) as part of the transactions processed through your Account. A description of the Privacy Policy applicable to your Account is provided below. If you have additional questions regarding this Agreement's Privacy Policy, please contact Global's Customer Support.

    a. **Collection / Use of Personal Information:** Collection of your personal information is designed to protect access to your Account and to assist in providing you with the products and services you have requested. All personal information collected and stored by Global or on its behalf, is used for specific business purposes: (1) to protect and administer your Account and initiate your authorized transactions; (2) to assist in the design or improvement of products and services; (3) to identify additional products or services offered by Global and/or its affiliated companies that may meet your needs; and (4) to comply with state and federal banking regulations. Only approved and authorized personnel will have access to such information. To further protect your information, auditing mechanisms are in place to identify anyone who may have accessed and in any way modified your personal information.

    b. **Maintenance of Accurate Information:** You may update your personal information online, at any time, by using your Password to log into Global's website or by contacting Global's Customer Support. To ensure that Global is able to protect your Account and verify your information, it is in your best interests to maintain accurate and current any records concerning your personal information.

    c. **Limited Access to Personal Information:** Access to your personal information is limited to only those personnel with a business reason for accessing such information. In addition, all personnel are trained and educated about the importance of confidentiality and customer privacy. Individual user names and passwords are used by approved personnel to access your personal information, providing audit trails to further safeguard the privacy of your personal information.

    d. **Third-Party Disclosure Restrictions:** All third parties with a business need to access your personal information are required to adhere to stringent privacy policies. Your personal information may be supplied to a third party in order to process a transaction you have authorized or if the disclosure is allowed or required by law, e.g., the exchange of information with reputable reporting agencies in response to a subpoena, in connection with the investigation of fraudulent activity, etc.

    e. **Sharing of Information:** You authorize Global to share certain information with your debt settlement provider and any third party to the extent necessary to administer your Account in accordance with your instructions and authorization. *You expressly acknowledge that Global does not maintain records of any documents or information associated with your debt settlement program.*

**XIX. USA Patriot Act Compliance:** As required by the USA Patriot Act, you authorize Global to take reasonable and practical measures to verify the accuracy of the information you have provided in the application portion of this Agreement, as well as to verify your identity by, including and without limitation, securing or accessing your credit report, and/or obtaining any other information about you in order to assist in combating terrorism and preventing Global's system and the banking system from being used for money laundering or other impermissible, illegal purposes.

**XX. Limitation of Liability:** Under no circumstances shall Global ever be liable for any special, incidental, consequential, exemplary, or punitive damages, or an amount in excess of the fees and charges Global receives from you as set forth in this Agreement. Moreover, under no circumstances shall Global ever be liable for the conduct or contractual obligations of a third party, including, but not limited to, the debt settlement provider.

**XXI. English Language Governs:** The terms of this Agreement and the products and services we provide are governed by the English language. As a courtesy, Global has made this Agreement available in languages other than English. If there is any difference in meaning between the English and non-English version of any of our documents, including this Agreement, the English version will apply to your Account and is available to you upon request.

**XXII. Merger Clause:** This Agreement contains the complete and final understanding between the parties. Any prior or all statements, representations, or agreements are superseded by this Agreement.

**XXIII. Customer Support Information:**

Correspondence Address: 4343 S. 118th E. Avenue, Suite 220
                           Tulsa, OK 74146
Telephone:     (800) 398-7191
Fax:           (866) 355-8228
**Website Address:** www.globalclientsolutions.com
Email: customersupport@globalclientsolutions.com

Note: Global will provide you with a welcome packet subsequent to the execution of this Agreement that will contain deposit instructions applicable to those customers who choose to send in deposits.

Initials 

**OPTION<sub>1</sub>LEGAL**                                   **AFFIDAVIT OF COMPLIANCE**

## Affidavit of Compliance

I, ___Deborah Schober___ as representative affiliated with and under contract to Option 1 Legal, Gardner Legal, LLC, in my role as a Member, Partner, Employee or Independent Contractor of Option 1, confirm that I have conducted a personal and face-to-face presentation with ___Daryl Canfieldjr___ (Client's Full Legal Name) to review Client's file and present all relevant information regarding Option 1's representation of Client, as it relates to Option 1's Client Retainer Agreement to provide legal representation on behalf of Client, including debt resolution and financial workout services. I confirm that Client has executed the Client Retainer Agreement on this date and such execution has taken place in my presence following my in-person meeting with Client. This Affidavit of Compliance establishes a written record to verify compliance with any and all applicable local, state or federal laws or regulations (collectively the "Applicable Laws"), including, but not limited, to the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-08, and the Telemarketing Sales Rule, as amended, 16 C.F.R. Part 310; 75 Fed. Reg. 48458, 48522.

The following subjects were reviewed with Client in writing and, where appropriate, orally or in response to questions regarding such representation:

1) That debt resolution which alters the terms of payment of unsecured debt might have a negative effect on Client's credit and that Option 1 does not clean up, fix, or repair credit. The program may result in Client being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest.

2) That the scope of Option 1's representation of Client is specifically limited to the following:

    a. Determine which specific debt resolution option is most appropriate for Client, including an initial review of their budget, income and debt;

    b. Review Client's current unsecured debt burden and thereafter negotiate and attempt to negotiate settlements with Client's creditors in an effort to modify or restructure Client's current unsecured debt;

    c. Provide litigation defense as outlined in the Letter of Engagement.

3) A full review of all fees and costs associated with the representation of the Client.

4) That Option 1 maintains a Performance Guarantee for each individual account entered by Client into the Option 1 debt resolution plan, of a minimum of settlement debt reduction of thirty-five percent (35%) of the debt's face value at the time of settlement, including interest, penalties, cost and late fees, as outlined further in the Terms and Conditions of the Engagement Letter. In the event that Option 1 does not meet this minimum standard for a particular account, it shall refund the pro rata share of all fees and costs paid to Option 1 for such work and Option 1 shall settle that individual account for Client at no additional cost. Exceptions to the minimum Performance Standard include: client skipping or defaulting on plan and/or settlement payments, Client's failure to accept a proposed settlement of at least a thirty-five percent (35%) reduction of an enrolled debt, any enrolled debts that become subject to a lawsuit during representation, any debts with a balance transfer or cash advance within six months of enrollment, any debts with a balance of less than $1,000 at time of this Agreement's execution, any debts with a credit union and any debt being garnished or subject to voluntary garnishment.

5) Client has been advised that the attorney or paralegal who conducted the initial meeting with Client limits their scope of representation or presentation to that initial meeting and review of the Client's file. The Client was made aware that the actual supervising attorney for their file may be a different attorney of the law firm who is licensed in their state.

6) A full review of the arbitration provision, including the fact that, by electing to go to arbitration, both parties are waiving certain rights, including the right to a trial in a court of law.

7) Client has been advised of and given an opportunity to review Option 1's Privacy Policy.

Names of all attendees: ___Daryl Canfield , Deborah Schober___

Start Time: ___1:30 pm___     End Time: ___2:00 pm___

Location of Meeting: ___1511 Nashville Hwy Columbia TN 38401___

Have any materials been provided or presented to the attendees in addition to the Enrollment Documents, the Face to Face Script, and the Face to Face Power Point Presentation?   (NO)   YES   (Circle One)
If so, indicate here and scan/upload all such additional documents or materials: _____

I affirm the above statements are true and accurate.

Executed on this Date: ___5-11-19___

Representative on behalf of Option 1:

Name: ___Deborah Schober___

Signature: ___Deborah Schober___

I affirm the above statements are true and accurate.

Client Name: ___Daryl Canfieldjr___          Signature: _____

**xiii**

## DEDICATED ACCOUNT AGREEMENT AND APPLICATION

I hereby apply for and agree to establish a non-interest bearing dedicated account ("Account") to be administered at a bank selected by Global Client Solutions LLC ("Global") for the purpose of accumulating funds to repay my debts in connection with a debt settlement program of my own choosing (my "Program") that is managed by the organization responsible for administering the Program ("Sponsor"). I understand that Global is not a party to my Program and does not participate in the management of my Program. I understand that this Agreement is subject to a customer identification program, as required by the USA Patriot Act and other applicable laws; and accordingly, I hereby represent that the following information is true and complete to the best of my knowledge and belief. In addition, I understand that I may be required to provide a copy of a driver's license and/or other information from time to time for use in connection with the verification of my identity and the administration of the Account. Furthermore, I understand that the Account is governed by this Agreement and that I am bound by all of its terms and conditions, including the binding arbitration provision located in paragraph XVII on page 2 of this Agreement in which I expressly give up my right to bring an action in a court before a judge or jury.

**ACCOUNT OWNERSHIP, CONTROL AND USE:** I understand that the Account, when established in accordance with this Agreement, will be my sole and exclusive property; that only I (or authorized contact, if any) may authorize deposits and creditor payments from my Account; and that only I may withdraw funds from and/or close my Account at any time as provided for in the Agreement. I hereby authorize (a) periodic deposits to be made to my Account pursuant to the authorization provided below and (b) periodic disbursements to be made from my Account. In this regard, I hereby authorize payment from my Account of the fees and charges provided for in this Agreement. Should I designate an author zed contact, such designation allows for confirmation of Account information and for receipt of messages regarding my Account to the designee. **PERMISSION TO SHARE DATA:** I hereby grant permission for the bank, Global and the Sponsor to share information regarding my Account and my Program with one another and with any other party to the extent necessary to facilitate the transactions I authorize on my Account, and acknowledge that sharing information among these parties is essential to the administration of my Account. I understand that the Agreement provides additional information relating to my privacy rights.

| Applicant: First Name (Please print clearly) | MI | Last Name | | Social Security # | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|---|
| Daryl | | Canfieldjr | | ███████ | ███████ |
| Authorized Contact (optional): First Name | MI | Last Name | | Social Security # | Date of Birth (mm/dd/yyyy) |
| | | | | | |

| Mailing Address | | City | | State | Zip Code |
|---|---|---|---|---|---|
| ███████ | | ███████ | | TN | ███████ |
| Physical Address (if different from mailing address) | | City | | State | Zip Code |
| | | | | TN | ███████ |

| Home Phone No. | Cell Phone No. | Email Address |
|---|---|---|
| ███████ | | ███████ |

| Challenge Question / Answer (for future ID purposes) |
|---|
| |

| Sponsor | Sponsor's Global Account Number (if known) |
|---|---|
| | |

| Applicant's Signature | Date |
|---|---|
| _[signature]_ | 5-11-19 |

### AUTHORIZATION TO DEBIT BANK ACCOUNT
#### Applicant's Financial Institution Information

| Bank Name | Routing Number¹ | Account Number² |
|---|---|---|
| ███████ | ███████ | ███████ |
| Bank Address | City | State | Zip Code |
| ███████ | ███████ | ███████ | ███████ |
| Name (as it appears on check) | | | |
| Daryl Canfieldjr | | | |
| Address (as it appears on check) | City | State | Zip Code |
| ███████ | ███████ | ███████ | ███████ |

¹ Routing Number is the 9-digit number appearing in the bottom left corner of your check.
² Account Number is to the right of the Routing Number and before the Check Number

| Amount of Debit | Day of Debit | |
|---|---|---|
| $ $510.31 | 10 | On or after the ___ day of each month until further notice. |

I hereby authorize Global to initiate debit entries to my checking account (or □ savings account) at the financial institution named above (my "Primary Bank Account"), in the amount(s) and on or after the date(s) set forth above, for the purpose of transferring funds to my Account. I represent that my Primary Bank Account exists, that I own it, and that I will maintain sufficient funds in it to permit the debits to clear on the applicable dates. I understand that I may incur a charge as set forth in the Schedule of Fees and Charges if any attempted debit is not immediately honored when presented; and that the financial institution providing my Primary Bank Account may also assess a charge if this occurs. In addition, I understand that I may subsequently designate another account for this purpose by contacting Global's Customer Support; that I may also change the corresponding amounts and dates from time to time in that manner; and that the representations I made above about my Primary Bank Account will apply to any other account that I designate.

This authorization shall remain in full force and effect until I give a written termination notice to Global that affords it a reasonable period of time to act on it. Any such notice, and any other written notice that is provided for in this Agreement, shall be sent to Global's Customer Support at the addresses set forth in the Agreement.

| Applicant's Signature Authorizing Global to Debit Applicant's Primary Bank Account | Date |
|---|---|
| X _[signature]_ | 5-11-19 |

All fields required unless otherwise noted

### SCHEDULE OF FEES AND CHARGES

| | |
|---|---|
| Account Setup (one-time fee) | $0.00 |
| Monthly Service Charge | $10.95 |
| Dishonored/Returned Deposit Item | $0.00 |
| **Premium Deposit Services** | |
| Incoming Wire Transfer | $10.00 |
| **Disbursement Fees** | |
| ACH | $2.00 |
| DirectPay | $2.00 |
| Manual Check (USPS) | $4.00 |
| Pay by Phone | $1.50 |
| 2ⁿᵈ Day Delivery* | $12.00 |
| Overnight Delivery* | $20.00 |
| Wire Transfer | $15.00 |
| Stop payment order | $17.50 |

*3:00 pm Central Time Cutoff

#### CUSTOMER SUPPORT

Any questions or inquiries relating to your Account should be directed to Global's Customer Support. See paragraph XXIII of this Agreement for Global's correspondence address, Global's website address, and the toll-free number to Global's Customer Support. Please note that Global is not a party to your Program, and any questions relating to your Program should be addressed to your Sponsor, and not to Global.

Version 19 - GCS - B - S - 05.10.17

Page 4 of 4

# OPTION1LEGAL

Services of:

**GARDNER LEGAL LLC**

**10440 LITTLE PATUXENT PARKWAY**

**SUITE 300**

**COLUMBIA, MARYLAND 21044**

# OPTION 1 LEGAL        CLIENT RETAINER AGREEMENT

This document is a legally binding agreement confirming that you ("Client") and Option 1 Legal ("Option 1") wish to form an Attorney / Client relationship.

Pursuant to this Agreement's terms, Option 1 will assist you with the resolution of burdensome debt, and as such, the Representation contemplated in this Agreement is referred to as a Debt Resolution Program. In return for Option 1's services, you agree to pay specific amounts to Option 1, as specified in this Agreement and its enclosures.

Client is retaining Option 1 to help resolve specific debts that Client cannot reasonably satisfy according to existing terms. These specific debts are listed in this Agreement.

Client must pay as agreed for Option 1 to operate as contemplated in this Agreement. The law firm puts in place a customized strategy based on the individual client and their debts in order to effectuate the goals of the law firm's representation. Following this strategy, Option 1's ability to resolve the proposed debt load is projected to take a number of months and an amount of payments listed in this document. A variance from this strategy, including Client's failure to make timely payments, will directly affect Option 1's ability to perform as agreed.

Option 1 holds itself to a standard of minimum results even though Creditors are under no obligation to negotiate with you, Option 1, or anyone else. Option 1 takes this risk in exchange for Client's promise not to unreasonably withhold consent when presented with offers to settle debts.

The specifics of Option 1 and Client's responsibilities and expectations with regard to this relationship are discussed in this Agreement in the following order:

1.    LEGAL SERVICES OPTION 1 PROVIDES

2.    FEES AND COSTS OF SERVICES PROVIDED

3.    OPTION 1'S PERFORMANCE STANDARD

4.    TERMINATION OF REPRESENTATION

5.    FURTHER IMPORTANT TERMS AND DISCLOSURES

6.    ARBITRATION AGREEMENT

7.    CLASS ACTION WAIVER

**Following the Attorney / Client Agreement are various notices, disclosures, schedules, lists, and authorizations related to this Agreement's terms. All enclosed documents are material to Option 1's representation of Client, and are incorporated into this Agreement.**

2

# OPTION LEGAL

# CLIENT RETAINER AGREEMENT

## CLIENT INFORMATION

### CLIENT

| Full Name: ▓ | DOB: ▓ | SSN: ▓ |
|---|---|---|
| Address: ▓ | City ▓ | State, Zip Code: ▓ |
| Home Phone: ▓ | Cell Phone: ▓ | Email Address: ▓ |

### CO-CLIENT

| Full Name: | DOB: | SSN: |
|---|---|---|
| Address: | City | State, Zip Code: |
| Home Phone: | Cell Phone: | Email Address: |

## PROPOSED PROGRAM INFORMATION

| | |
|---|---|
| Total Unsecured Debt: $31,698.00 | *Estimated Program Length (months): 48 |
| Date of First Payment: 6/10/2019 | Program's Payment Amount: $510.31 |
| *Estimated Total Payments: $24,494.42 | Law Firm Contact: Fred Serrano |

\* - The estimates provided above are just that — good faith estimates. The actual results vary on a case by case basis. In addition, the accuracy of these estimates is dependent on the accuracy of the information that you provide, the terms of the settlements we are able to negotiate with your creditors and on your ability to save a consistent amount each month.

**3**

# 1. LEGAL SERVICES OPTION 1 PROVIDES

Option 1's services are performed by a group of professionals, including attorneys, paralegals, negotiators, assistants, and others. Attorneys directly supervise the activities they do not directly perform. Option 1 will perform the various services described in this section.

## 1.1. DEBT ANALYSIS

Option 1 will review Client's personal hardship and other debt circumstances and formulate a plan to negotiate improved terms.

## 1.2. NEGOTIATE AND RESOLVE CLIENT DEBT

Option 1 will represent Client in the negotiation and resolution of the unsecured debts listed in the Creditor List enclosed with this Agreement. Representation related to any debt is governed by the promises and limitations discussed throughout this Agreement.

## 1.3. SERVICES OUTSIDE SCOPE OF REPRESENTATION

Option 1's services are limited to those specifically listed above. This means that Option 1 will not provide accounting, financial planning, or tax advice. Option 1 does not engage in credit repair or credit reporting. Option 1 does not attempt to resolve debts on which a judgment has been obtained. Bankruptcy services, and defense or prosecution of any debt not listed in this agreement are outside the scope of representation. Further, Option 1 cannot guarantee that creditor or collector harassment will cease at any point in the representation. However, under some circumstances, Option 1 may take appropriate legal action against creditors or collectors engaged in illegal activity.

## 1.4. WORK PERFORMED BY CONTRACTED PARTIES

Option 1 Legal may contract work relating to this Agreement to third parties for such tasks including, but not limited to customer service and debt negotiations. Option 1 attorneys will supervise all third-party entities to ensure contracted services comply with Option 1's rules and regulations.

## 1.5. LITIGATION DEFENSE

Option 1 will advise and represent Clients in their defense of litigation initiated by creditors or collectors to recover debts listed in this Agreement. Option 1 attorneys are immediately notified of litigation, and may be assigned to address any litigation served on Client after the effective date of this Agreement. Litigation services are further conditioned and limited by other terms of this Agreement, circumstances of practicality, and jurisdictional rules.

## 1.6. CONDITIONS OF THIS AGREEMENT'S EFFECTIVENESS

    a. This Agreement does not take effect, and Option 1 has no obligation to provide any services, until both Client and Option 1 have executed a copy of this Agreement and such copy is delivered to both Parties.

    b. Further, this agreement does not take effect until Client has paid the initial payment of the flat fee retainer as set forth in the payment schedule enclosed, and the payment has cleared.

## 1.7. ASSISTANCE IN DEALING WITH DIFFICULT CREDITORS

It is important to understand that Option 1 cannot force a creditor to negotiate your debt. Although Option 1 will not accept a debt into the program from creditors it knows will not negotiate debts, there are times when a

4

creditor that has negotiated with Option 1 in the past may refuse to negotiate a debt. In such instances, the Option 1 attorneys or negotiators may require your assistance in participating in the negotiation process. Option 1 personnel will provide you with the information you will need in order to contact your creditor directly in an effort to reach a satisfactory settlement. If Option 1 cannot successfully negotiate a debt for you, even with your assistance, it will refund to you the portion of your fees associated with that debt.

## 1.8. TIMING AND AMOUNT OF SETTLEMENT OFFERS

Option 1 will begin contacting your creditors as soon as we determine that a good faith offer to settle a given debt, whether on a lump-sum or installment basis, may be made, with such factors as the creditor's settlement policies, the rate of account accretion, the size of each debt and how close a debt may be to charge-off. Some creditors prefer that they not be contacted until you have accumulated sufficient funds in your Dedicated Account to allow a negotiated resolution within their historic norms. While settlement guidelines differ widely among creditors, an accumulation of 25% of the then-current balance of a debt will normally enable us to make a good-faith offer to settle that debt.

## 1.9. LITIGATION DEFENSE: SERVICES / CONDITIONS AND LIMITATIONS

Creditors and/or debt collectors may file lawsuit(s) against Client in order to collect non-payment of owed debt(s). Option 1 will provide Litigation Defense Services in the event the client receives a Summons and Complaint. The Litigation Defense Services will include work done in court and/or negotiations out of court. Option 1's Litigation Defense Services and limitations include:

### SERVICES

1. Option 1 will receive, review, and analyze any summons, complaint, petition, application, or other operative pleading the client has received.
2. Option 1 will evaluate potential legal defenses to the Plaintiff creditor's suit.
3. Option 1 will review, analyze, and counsel Client regarding collection activity and debt restructuring associated with the litigated debt.
4. Option 1 will engage with the Plaintiff or its hired legal counsel on Client's behalf to negotiate a resolution of the litigation.
5. Option 1's attorneys may determine that a valid defense exists to the law suit, or that the suit is defective in some way favorable to Client. This determination varies by jurisdiction, current legal trends, and the personal knowledge of the local attorney.
6. If Option 1's assigned attorney determines that Client is likely to gain a favorable result through continued defense of the litigation, he or she will prepare and file responsive pleadings on the Client's behalf, appear at subsequent court proceedings, and continue defense through various stages of litigation, including trial, if prudent.
7. If Option 1 determines in its sole discretion that it does not have a good faith basis to assert a defense to the litigation on Client's behalf, Option 1 will communicate this determination to the Client and discuss alternative potential strategies for resolving the litigation. In such cases, Option 1's strategy may include, but would not be limited to, engaging in out of court negotiations directly with the creditor. No fees for Litigation Defense Services will be

charged if Option 1 determines it cannot provide a defense to the litigation.

### CONDITIONS AND LIMITATIONS

1. All pages of any summons, complaint, exhibits, petitions, and/or other pleadings served to the client must be submitted to Option 1.
2. All lawsuit paperwork must be submitted to Option 1 no less than fifteen (15) days prior to the lawsuit response date, or immediately upon the client's receipt of lawsuit paperwork.
3. If the litigation is in a State that permits less than fifteen (15) days' notice, all lawsuit paperwork must be submitted no less than seven (7) days prior to lawsuit response date.
4. All lawsuit paperwork must be submitted to Option 1 Legal at their fax number 1-855-423-1355 or email address Cs@option1legal.net.
5. The "Retainer Fee," outlined in the enclosed Payment and Fee schedule, must be paid in full, or payments must be current on any agreed payment plan specific to the "Retainer Fee" in order for Option 1 to provide Litigation services.
6. Option 1 is not required to provide Litigation Services on any lawsuit of which the Client had knowledge prior the execution of this Agreement with Option 1. Knowledge of a lawsuit is typically determined by service of process (delivery of a legal complaint to a party being sued).
7. Option 1 will not provide Litigation Services related to debts which are not included in this Agreement, or any attachments or amendments to this agreement made prior to Client's knowledge of the lawsuit.

## 2. FEES AND COSTS OF SERVICES PROVIDED

Option 1's fees are payable according to the following terms. All fees are charged on a flat fee basis according to the Payment Schedule enclosed with this Agreement. The estimated total fees for Option 1's services are $ 10655.66 including the Retainer Fee, Monthly Legal Administration Fees and Service Costs described below.

### 2.1.  RETAINER FEE AND MONTHLY LEGAL ADMINISTRATION FEES

a   Client will initially pay Option 1 $ 995.00 as a Retainer Fee.

b   The Retainer Fee shall be paid on a monthly basis over 9 months. The first 2 payments shall be $150.00 , thereafter payments will be $100.00 and a final payment of 95.00 .

c   In addition, Client shall pay an ongoing monthly flat Legal Administration Fee of $ 89.00 for debt review, debt resolution plan analysis and structuring, supervision of and participation in creditor negotiations, pre-litigation settlement support, and the Litigation Defense Services described in Section 1.6 of this Agreement. The estimated total Legal Administration Fee is $ 4,272.00 based on Option 1's estimate that it will take a total of 48 months to settle Client's debt.

d   Client shall be responsible for Legal Administration Fees for all months Client remains active with Option 1.

### 2.2.  SERVICE COST – RELATED SERVICES

In addition to the legal services provided by Option 1, there are non-legal services related to the implementation, management and maintenance of Client's debt negotiation plan performed under the supervision of Option 1's attorneys. These services are provided at a cost equal to 17% of Client's total scheduled debt (hereinafter referred to as Service Cost). The Service Cost shall be paid by Client to Option 1 in equal consecutive monthly payments in the amount of $244.94 per month, totaling $5,388.66 .

Option 1 has a non-exclusive reciprocal referral agreement with independent contractors to provide these services under Option 1's direct supervision. Representatives of such independent contractors cannot and will not provide any legal advice to the Client, and any such advice will only be communicated to Client by Option 1. Although these services are performed under Option 1's supervision, a court or courts might determine that there is no attorney-client relationship between Client and the independent contractor representatives in regard to these services, and communications between Client and the independent contractor representatives might not be protected by attorney- client privilege.

### 2.3.  APPLICATION CLIENT OF FUNDS

All funds paid by Client will be saved in a Dedicated Account that is owned by Client and held by a third party dedicated account holder (See Dedicated Account Agreement) for use in making payments toward any settlements negotiated paying Option 1's fees under the terms of this Agreement.

**All funds in Client's Dedicated Account shall remain under Client's control at all times, and may be withdrawn by Client at any time without penalty. If Client notifies Option 1 or the third party dedicated account holder of a request to withdraw their funds, Client shall be entitled to receive all funds in the Dedicated Account, other than any funds that have previously been earned by Option 1 under the terms of this Agreement, within seven (7) business days of such request.**

It is strongly recommended that Client retain all funds available for settlement payments and fees to allow Option 1 the greatest ability to effectively represent Client under the terms of this Agreement.

## 2.4. METHOD OF PAYMENT

Under this Agreement, Client agrees:

a  to have Client's initial flat fee retainer and subsequent fees and costs as outlined above based on the attached Payment Schedule to be automatically drafted by Client's third party dedicated account holder from Client's bank account into an authorized Federal Deposit Insurance Corporation ("FDIC") insured bank account held in Client's name (the "Dedicated Account") with Client's first payment to start on ___6/10/2019___, and thereafter each month on the _10th_ day; and

b  to have Client's payments of Service Cost and settlement savings fund payments based on the attached Payment Schedule to be automatically drafted from Client's bank account into the Dedicated Account held in Client's name with Client's first payment to start on ___6/10/2019___ and thereafter each month on the _10th_ day.

## 2.5. EARLY PROGRAM COMPLETION AND PRE-PAYMENT OF PROGRAM FEES

If Option 1 resolves all debts listed in this Agreement before the scheduled date of Client's final Service Cost payment, Client must continue to make all payments for the Service Cost and Retainer outlined in this Agreement. However, Client will not be responsible for any Legal Administration Fees following the date that a settlement agreement is entered on the final listed debt. Client can pay off their program early with no pre-payment penalties.

## 2.6. COSTS OF LITIGATION SERVICES – COURT AND TRIAL PREPARATION COSTS

a  Client must pay all costs associated with Litigation Services, including the payment of any court filing fees or any other court-imposed costs associated with the litigation. These costs vary by jurisdiction. Option 1 will NOT advance such costs. Client acknowledges that failing to timely pay necessary costs may have adverse consequences, including but not limited to entry of judgment against Client in the litigation.

b  If a litigated matter proceeds to trial, Client shall also be required to pay the costs associated with Option 1's trial preparation, which the parties hereby agree in advance shall be set at three hundred fifty dollars ($350.00) per trial (the "Trial Costs"). Trial Costs commonly include but are not limited to, photocopying and reproduction costs, notary fees, long distance telephone charges, messenger and other delivery fees, postage, travel costs including parking, mileage, transportation, meals, and hotel costs, investigation expenses, and other similar items. The Trial Costs must be paid sixty (60) days before the scheduled trial date unless otherwise agreed upon by Option 1 and the Client. The Client shall not be responsible for, and shall be refunded the Trial Costs if the litigation is settled at least thirty (30) days before the trial date.

## 2.7. ADDITIONAL FEES

Client may be responsible for additional processing fees. Such fees may include: Payment Plan Change Fees ($19.95), Adding/Removing Debts ($25.00), Renegotiation Fee ($299.00), Settlement Payment Fees ($10.00), and Banking Changes ($25.00).

## 2.8. INCREASES IN BALANCES OF ACCOUNTS SUBJECT TO REPRESENTATION

a  Client acknowledges and agrees that Client will not continue to incur any additional debt on any accounts subject to this Agreement, other than late fees, interest, and penalties.

b  Client's program fees, program length, and draft amounts may increase due to any additional balances incurred by Client.

# 3. OPTION 1'S PERFORMANCE STANDARD

Option 1 has a set Performance Standard for each debt enrolled in the Debt Resolution Program. Option 1 sets a target debt reduction of minimally thirty-five percent (35%) of amount owed on the debt at the time the Agreement is executed. If Option 1 is unable to meet this target debt reduction, Option 1 will refund the share of all Option 1 fees & costs for work on this individual debt.

## 3.1. TERMS AND CONDITIONS AFFECTING PERFORMANCE STANDARD:

a. Client must be in complete compliance and cooperation with Option 1 under the terms of this agreement.

b. Client's payments must be current under the Service Cost obligations and cannot default on payments to Creditors pursuant to settlement of any listed debt.

c. Client may not be entitled to a refund if Client is unwilling or unable to accept a proposed settlement at a reduction of thirty-five percent (35%) of enrolled debt at time that settlement is secured by Option 1.

d. If Option 1 is unable to settle Client's listed debts, the refund shall be calculated on a pro rata basis as to Service Cost paid per each individual debt.

e. The Performance Standard does NOT apply to any enrolled debt that becomes subject to a lawsuit during representation. Client will be required to notify Option 1 of any lawsuit, at which time the Performance Standard will cease to apply, and Litigation Services will commence.

## 3.2. PERFORMANCE STANDARD DOES NOT APPLY TO THE FOLLOWING TYPES OF DEBT:

a. Any debt with a balance transfer or cash advance which occurs within six months of enrollment;

b. Any debt with a balance of less than one-thousand dollars ($1,000.00) at the time of this Agreement's execution;

c. Any debt which is subject to a lawsuit at the time of this Agreement's execution;

d. Debts being garnished, or subject to voluntary garnishment are also excluded from this provision;

e. Any debt with a credit union. Option 1 will endeavor to settle such debts on behalf of Client on the best terms possible, but cannot guarantee that such settlements will meet the Performance Standard.

f. Debts that are charged off or written off by a creditor or become uncollectable, as a result of Option 1's strategy, shall be considered approved settlements. As an approved settlement, these debts will not be subject to any refund.

g. Client must complete all payments as listed and hereafter amended in order to provide Option 1 with the opportunity to settle all enrolled debt on the Creditor Listing enclosed. Any refund may be disqualified if Client terminates representation prior to completion of payments contemplated in this Agreement.

## 3.3. BANKRUPTCY AND OTHER ALTERNATIVES

Option 1 may discuss alternative legal routes in the event of changing circumstances on any enrolled debt(s), such as Chapter 7 & 13 Bankruptcies.

## 3.4. SHOULD CLIENT DEFAULT ON NEGOTIATED SETTLEMENT TERMS

Option 1 is not required to renegotiate any debts that enter default after Option 1 has arranged payment terms, and those terms were agreed to by Client. Client may request Option 1 renegotiate such debt, and will be subject to an additional fee of two-hundred-ninety-nine dollars ($299.00) per renegotiation at the client's expense. Client must also comply with following terms for renegotiation(s):

a. The Representation Standard provision only applies to the balance of enrolled debt, not accounting for payments made on initial settlement prior to default.

b. Renegotiation may result in the settlement amount increasing.

**Client understands & agrees they are not entitled to any refunds under the Performance Standard if any of the above terms are not met.**

Case 1:20-ap-90110   Doc 1-1   Filed 08/03/20   Entered 08/03/20 10:17:52   Desc
Exhibit    Page 23 of 34

# 4. TERMINATION OF REPRESENTATION

## 4.1.  TERMINATION BY CLIENT

Client may terminate this Agreement at any time, and for any reason. Should Client terminate this Agreement before all debts subject to the representation are resolved, all savings and unearned fees in Client's Dedicated Account will be refunded to the Client.

## 4.2.  TERMINATION BY OPTION 1

This Agreement may be terminated by Option 1 at any time for good cause, and upon reasonable notice to Client. In addition, subject to any applicable legal and ethical standards governing Option 1's right to withdraw representation, Option 1 may withdraw from representing Client in any litigation under the terms of this Agreement either with Client's consent, or with the permission of the court in which such litigation is pending.

## 4.3.  DEFINITION OF "GOOD CAUSE" FOR TERMINATION BY OPTION 1

a.  **Client's Failure to Cooperate with Option 1.** Client must cooperate and comply with all reasonable requests by Option 1 and its agents in connection with the services to be performed under this Agreement, including requests for information and documentation, responses to settlement offers, and matters related to any litigation. Client acknowledges and agrees that failure to cooperate with Option 1 is grounds for Option 1 to terminate this Agreement and/or to withdraw from representation of Client in any litigation associated with the Client's failure to cooperate.

b.  **Failure to Pay Fees and Costs.** If Client fails to pay the legal fees and Service Costs required under the terms of this Agreement, Option 1 may terminate this Agreement and withdraw from representation of Client in any litigation associated with this Agreement.

c.  **Failure to Pay Costs of Litigation.** In the event that Client fails to pay any of the court filing fees or other fees or costs associated with the litigation of a listed debt, Option 1 will not be responsible for acting in response to the lawsuit until such time as the fees or costs associated with the filing have been received by Option 1. Moreover, Client agrees and acknowledges that the failure to pay the three hundred fifty dollar ($350.00) Trial Costs associated with a trial in a timely manner shall constitute sufficient grounds for Option 1 to withdraw from representing Client in connection with the lawsuit.

d.  **Failure to Follow Option 1's Advice on Reasonable Settlements.** Client agrees and acknowledges that Option 1 has an obligation to Client as both a counselor and as an advocate, and that the underlying purpose of the Representation is to negotiate settlement of Client's debts. In the event that Option 1 negotiates a reasonable settlement offer and advises the Client to accept, Client agrees that he or she shall not unreasonably withhold consent to accept the offer. Client acknowledges and agrees that it is unreasonable to withhold consent on a settlement offer when Client has no valid defense to the litigation claims at issue or when the settlement offer is within Option 1's Standard of Performance. If Client refuses to consent to a reasonable settlement offer, Client agrees that Option 1 may withdraw from representing the Client in any litigation associated with the settlement offer at issue.

## 4.4.  WITHDRAWAL FROM REPRESENTATION OF CLIENT IN LITIGATION

In the event that Option 1 is entitled to withdraw from any litigation for whatever reason, Client agrees to execute any documents necessary to effectuate this withdrawal, including, without limitation, the execution of a substitution of attorney document that relieves Option 1 as counsel in the litigation. If Client fails to execute any necessary documents, Option 1 may request the court to be relieved as Client's attorney in that particular matter. Client acknowledges and agrees that Option 1's withdrawal from any specific litigation does not necessarily terminate Client's entire Agreement with Option 1 for any other litigation or for any other services falling within the scope of this Agreement. Notwithstanding Option 1's withdrawal and without regard to the reasons for the withdrawal, Client will remain obligated to pay Option 1 for any services performed up to and including when Option 1 delivers its withdrawal notice to Client or Option 1 receives a court order authorizing its withdrawal.

Case 1:20-ap-90110   Doc 1-1   Filed 08/03/20   Entered 08/03/20 10:17:52   Desc
Exhibit    Page 24 of 34

# 5. FURTHER IMPORTANT TERMS AND DISCLOSURES

## 5.1. CLIENT'S RESPONSIBILITIES TO OPTION 1

a. In consideration of Option 1's experienced counselling, work out a feasible monthly payment plan based on the total amount of debt to be modified, which contemplates all fees and costs to Option 1 as well as funds to deposit for use in settling debts on which Option 1 represents Client. The Payment Schedule is enclosed;

b. Provide Option 1 with accurate and complete information relating to any Client's finances and the state of Client's financial hardship as documented in the attached Hardship and Budget Information statement.

c. Provide Option 1 accurate and complete information and documents relating to any debts subject to Option 1's representation. These documents must identify each debt by creditor's name, current account balances, and account numbers. Option 1 is under no obligation to verify the information supplied by Client;

d. Forward all correspondence from creditors and collection agencies as soon as possible, but no longer than five (5) days from receipt;

e. Make all payments according to the Payment Schedule;

f. Notify Option 1 in writing of any settlement offers you receive, including all of the terms and conditions of the offer;

g. Be willing and able to aid in negotiations when necessary, and understand that your level of involvement will not affect the terms of this Agreement, but may affect the speed and effectiveness of Option 1's efforts;

h. Respond timely to all requests or communications from Option 1 or its representatives, and promptly provide Option 1 with any change of address or other contact information;

i. Make timely and complete payments on settlements negotiated by Option 1 and approved by Client.

## 5.2. CLIENT'S AUTHORIZATIONS

Client Authorizes Option 1 to:

a. To disclose information regarding Client's financial condition or status to any creditors and collectors in connection with effective representation;

b. To hold itself out as Client's representative to any party seeking to collect the debts listed in this Agreement's Creditor Listing;

c. To engage creditors and collectors to negotiate reduction of the debts listed in this Agreement's Creditor Listing;

d. To provide Client's bank account information to the third party dedicated account holder in order to facilitate the establishment of the Dedicated Account for Client. This authority shall remain effective until cancelled by Client in writing. Client will provide Option 1 with a voiced check or savings deposit slip with respect to Client's bank account.

10

**5.3. CLIENT ACKNOWLEDGMENTS**

Client Acknowledges and agrees that:

a. The Payment Schedule is based on previous settlement averages achieved and calculated by Option 1. Accordingly, the actual amount paid into the program may vary. More or less funding may be required to settle all represented debts;

b. The program's contemplated duration is an estimate based on full and timely payment each month as listed in the Payment Schedule. Any variation of payments, as well as many other factors, can affect the length of the program;

c. Option 1 will deduct monthly Legal Administration fees through the duration of Client's participation in the debt resolution program;

d. The success of Option 1's representation on any particular debt may vary based on a number of factors, including your ongoing ability to make timely deposits to your Dedicated Account, the willingness of your creditors to negotiate settlements of your debt and other factors that are outside Option 1's control;

e. Your participation in the program may result in you being subject to collections. Creditors may still contact you regarding debts subject to this Agreement. However, you should notify Option 1 of harassment, as there may be steps Option 1 can take to prevent or rectify illegal harassment;

f. Any reduction in the amount owed by Client may be considered a taxable event. You should consult a tax professional to determine any tax obligations they may have as a result of any settlements negotiated on their behalf;

g. The fees and costs paid to Option 1 are compensation for the services described in the Scope of Engagement and the funds deposited into your Dedicated Account are for the purpose of saving funds for settling your accounts with creditors. Until you authorize and approve any such settlements, no payments of any kind, including any monthly minimum payments will be made to your creditors on the accounts, except those that are subject to Option 1's Settlement Pre-Authorization form which states that Option 1 shall make all reasonable efforts to obtain your approval for any settlement offer obtained on your behalf. In the event Option 1 cannot contact you after making reasonable efforts, you authorize Option 1 to proceed with any settlement resulting in a savings of 50% or more of your debt;

h. Option 1 will refund the entire portion of any unused retainer fees for services that have not yet been rendered in the event you to terminate Option 1's representation;

i. The amount you owe to your creditors or collectors may increase due to the accrual of late fees, interest and penalties on the accounts while enrolled in the program;

j. Your participation in the program will likely have an adverse effect on your credit worthiness and may result in you being sued by creditors or debt collectors;

k. You should not incur any new or additional debt and should refrain from using or obtaining credit during the Option 1 debt resolution representation. You understand and agree that all credit cards or lines of credit shall be closed and that no additional credit cards or lines of credit should be applied for during the Option 1 debt resolution representation. You understand and acknowledge that you may keep credit cards out the program for emergency purposes only. These credit cards should not be from the same issuing bank as any accounts you entered into the Option 1 debt resolution representation;

11

l. No debts listed in this Agreement have been secured by any personal or real property.

m. Active, inactive, or former military personnel understand that his/her military rank, pay, and/or benefits may be adversely affected by delinquent debt accounts and/or a decreased credit rating and Option 1 Legal shall not be held responsible for any negative consequences that may occur by such personnel by their enrollment into the Debt Resolution plan.

n. Individuals with, or who are seeking Security Clearance, including military members, contractors and consultants, understand that his or her Security Clearance may be adversely affected by delinquent debt accounts and/or a decreased credit rating and Option 1 Legal shall not be held responsible for any negative consequences that may occur by such personnel by their enrollment into the Debt Resolution plan.

 Initial: _____

## 5.4. VOLUNTARY PARTICIPATION

Client understands that participation in Option 1's program is voluntary and you may, upon written request, cancel Option 1's services at any time prior to the original estimated conclusion date of the program.

Client also agrees that:

a. Early termination may prevent Option 1 from providing all services outlined herein and Option 1 will not be responsible for any unresolved accounts upon cancellation.

b. In the event of any early termination of this Agreement, all Service Costs, Legal Administration Fees, Banking Fees, and Other Fees shall be considered earned and are non- refundable.

c. Upon termination of this Agreement, any funds held in your Dedicated Account, less any amounts paid or owed in the form of fees and settlement payments, shall be remitted to you by paper check or ACH transfer.

d. Option 1 will not collect any additional fees that have not previously become due after the termination date.

e. With Option 1's permission, you may re-enroll Client Debts after termination. Any re-enrollment shall be at Option 1's sole discretion and is subject to a Reactivation Fee in the amount of two hundred ninety-nine dollars ($299.00).

## 5.5. SKIPPED DRAFTS

a. In the event Client requests to skip a monthly draft, Client shall notify Option 1 at least five (5) business days prior to the scheduled draft.

b. Client will continue to be charged any applicable monthly Legal Administration service costs, retainer fees and any banking fees for any skipped months.

c. An additional month shall be added onto the Client's program to make up for each month Client skips a draft.

d. Option 1 may deny a Skip Request and/or limit the number of approved Skipped Drafts if Option 1 determines it is in the client's best interest to continue drafting Client's monthly payment. Reasons for denying

Case 1:20-ap-90110  Doc 1-1  Filed 08/03/20  Entered 08/03/20 10:17:52  Desc
Exhibit  Page 27 of 34

a Skip Request may include, but are not limited to, a resulting inability to negotiate and settle debts, potential acceleration of litigation and the default of active settlements.

## 5.6. EXTENSION OF REPRESENTATION

a. Subject to the terms of the Performance Standard, in the event Client's debts are not fully settled at the end of the estimated program timeframe, Option 1 will automatically extend Client's program and continue to draft Client's monthly payment unless Client notifies Option 1 in writing that Client does not wish to extend representation. Any fees due during the extension will be reduced by 50%.

b. Client shall remain responsible for the monthly Legal Administration Fees during any extended representation period.

## 5.7. ADDITIONAL DISCLOSURES & DISCLAIMERS

a. There are other remedies/solutions available for clients to relieve themselves of their debt burdens. Those remedies include bankruptcy and consumer credit counseling.

b. Declaring bankruptcy may discharge or allow a court-imposed repayment plan for the majority of Client's debts. However, this will be reflected as a permanent record on a Client's credit report for up to 10 years. Option 1 will discuss and advise Client as to the bankruptcy option, including fees and costs, at any time that Client's circumstances change, or Client requests such consultation. There are no additional fees required from Client for such consultation and preliminary advice regarding bankruptcy.

c. Consumer credit counseling may have less impact on a Client's credit rating than bankruptcy and reduce interest rates on current debts, but it generally requires re-payment of most-to-all of Client's existing debt and not provide significant monthly payment relief.

## 5.8. CONFIDENTIALITY OF CLIENT INFORMATION

Option 1 agrees that any information provided by Client to Option 1 and/or its independent contractors will be kept confidential and only be used in providing the services delineated in the Option 1 Privacy Policy and in this Agreement, which may include, among other things, disclosure of confidential information to appropriate third parties in order to (a) streamline the negotiation process, and (b) enhance Client's opportunities for settlement offers with Client's various creditors Client agrees and acknowledges that such disclosures will be made with Client's express consent and will not require any additional consent or consultation by Client before such disclosures are made.

## 5.9. PRIVACY POLICY

Client agrees to receive notices and disclosures regarding Client's privacy information and rights in connection with this Agreement, including any future changes to the terms of Option 1's Privacy Policy, by electronic means, including but not limited to by email, by links to the Privacy Policy, and/or by reviewing current and future updated notices, disclosures and policies posted on Option 1's website.

## 5.10. AUTHORIZATION TO OBTAIN CREDIT REPORT

Client agrees that Option 1 and its independent contractors may, from time to time during Client's engagement with Option 1, obtain and review Client's credit report as necessary or appropriate to evaluate Client's current financial situation and perform the legal services on Client's behalf.

13

## 5.11. ENTIRE AGREEMENT

This Agreement is the entire agreement between the parties. All prior negotiations and discussions are superseded by this Agreement. Option 1 has made no representations other than those expressly set forth in this Agreement, and neither Party has relied upon any representations or promises other than those expressly set forth herein.

**14**

# 6. ARBITRATION AGREEMENT

Any controversy, claim or dispute between Client, on the one hand, and Option 1 and any of its third-party service providers, on the other hand, arising out of or relating to this agreement or the breach, termination, enforcement, performance, interpretation or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in the county in which Client lives in accordance with the Federal Arbitration Act pursuant to the substantive laws of the state of Client's residence.

Client, on the one hand, and Option 1 and its third-party service providers, on the other hand, agree that the arbitration shall be administered by the American Arbitration Association ("AAA") or in the event of its unavailability, an arbitration service with substantially similar rules and arbitrator rosters, pursuant to its rules and procedures, and a single arbitrator shall be selected to preside by the arbitration service. Any award rendered by the arbitrator shall be final and shall not be subject to vacation or modification. Judgment on the award made by the arbitrator may be entered in any court having jurisdiction. If Client, on the one hand, or Option 1 and any of its third-party service providers, on the other hand, fails to comply with the arbitrator's award, the injured party may petition the applicable court for enforcement.

Any arbitration of any controversy, claim or dispute between Client, on the one hand, and Option 1 and any of its third-party service providers, on the other hand, will take place on an individual basis without resort to any form of class or representative action. **This class action waiver precludes Client from participating in or being represented in any class or representative action regarding a controversy, claim or dispute.** Client waives the right to arbitrate any controversy, claim or dispute between Client, on the one hand, and Option 1 and any of its third-party service providers, on the other hand, as a class action, either as a member of a class or as a representative.

Client and Option 1 shall share the costs of the arbitration equally up to $1,000, including AAA's filing, administration and arbitration fees, but otherwise shall bear their own costs and attorneys' fees. If the arbitration costs exceed $1,000, Option 1 will pay Client's share of costs in excess of $1,000.

**Binding arbitration means that both Client and Option 1 give up the right to a trial by a jury and their rights to have a dispute resolved in a court of law. It also means that both Client and Option 1 give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can be appealed, that discovery may be severely limited by the arbitrator, and that certain remedies such as statutory injunctions and fee shifting which may be available in a court of law may not be available. In addition, under the terms of this Agreement, Client also gives up the right to bring any claims on a consolidated or class basis in the arbitration.**

In the event Client, on the one hand, or Option 1 and any of its third-party service providers, on the other hand, brings suit against the other party in federal, state or local court instead of proceeding with arbitration, or unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including reasonable attorneys' and paralegals' fees and costs for having to compel arbitration or defend or enforce the award. The provisions of this Arbitration Agreement section shall survive any termination of this Agreement.

**OPTIONLEGAL**                    **CLIENT RETAINER AGREEMENT**

PLEASE CONSULT WITH INDEPENDENT LEGAL COUNSEL OF YOUR CHOICE PRIOR TO SIGNING THIS AGREEMENT AS
THE BINDING ARBITRATION REQUIREMENT AND CLASS ACTION WAIVER CONTAINED HEREIN AFFECT YOUR
RIGHTS, PLEASE DO NOT SIGN THIS AGREEMENT IF YOU DO NOT UNDERSTAND THESE LIMITATIONS.

INITIAL HERE ⟩  Initial: _____

16

## 7. CLASS ACTION WAIVER

Any court trial (whether before a judge or jury) of any controversy, claim or dispute between Client, on the one hand, and Option 1 and any of its third-party service providers, on the other hand, will take place on an individual basis without resort to any form of class or representative action). THIS CLASS ACTION WAIVER PRECLUDES CLIENT FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CONTROVERSY, CLAIM OR DISPUTE. Client waives the right to litigate in court any controversy, claim or dispute between Client, on the one hand, and Option 1 and any of its third-party service providers, on the other hand, as a class action, either as a member of a class or as a representative, or to act as a private attorney general. The provisions of this Class Action Waiver section shall survive any termination of this Agreement.

**PLEASE CONSULT WITH INDEPENDENT LEGAL COUNSEL OF YOUR CHOICE PRIOR TO SIGNING THIS AGREEMENT AS THE CLASS ACTION WAIVER CONTAINED HEREIN AFFECTS YOUR RIGHTS. PLEASE DO NOT SIGN THIS AGREEMENT IF YOU DO NOT UNDERSTAND THESE LIMITATIONS.**

**INITIAL HERE** ⟩  Initial: 

I represent that I have read, understand and agree to be bound by the terms of this Client Representation Agreement as set forth above and in the documents incorporated in this Agreement. I further acknowledge that the terms and conditions of this Agreement have been explained to my satisfaction by a representative of Option 1 and that I have no unanswered questions about the program or this Agreement. I confirm that I agree to arbitrate any claims and to waive any right to bring or participate in a class action against Option 1.

Agreed to this __11__ day of __May__, 20_19_

**SIGN HERE** ⟩

_____
Signature of Client

**SIGN HERE** ⟩

_____
Signature of Co-Client

_____
Signature of Option 1

**17**

**OPTION LEGAL**

## NOTICE OF RIGHT TO CANCEL

Date of Transaction: _____ 5/10/2019 _____

You may CANCEL this transaction, without Penalty or Obligation, including any agreements you signed at the in-person meeting with the Option 1 attorney and/or paralegal, for up to FIVE BUSINESS DAYS from the above date. If you cancel, you will not be obligated to make any payments to the law firm and any agreements or other documents that you signed will be null and void. To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice to the address below NOT LATER THAN MIDNIGHT OF _May 16 2019_____ (five business days after the Date of Transaction).

I HEREBY CANCEL THIS TRANSACTION.

Date: _____

Client's Signature: _____

Co-Client's Signature: _____

### Please send to:

OPTION 1 LEGAL

10440 LITTLE PATUXENT PARKWAY

SUITE 300

COLUMBIA, MARYLAND 21044

**(Sign and return this document only if you decide to CANCEL this transaction within five business days of the Date of Transaction shown above.)**

i

# OPTION1LEGAL

## SETTLEMENT AUTHORIZATION
## CLIENT'S AUTHORIZATION FOR SETTLEMENT

Option 1 shall make all reasonable efforts* to obtain Client's approval for any settlement offer obtained on Client's behalf. In the event Option 1, cannot contact Client after making reasonable efforts, Client authorizes Option 1 to proceed with any settlement resulting in a savings of 50% or more of the Client's debt at the time of settlement.

Furthermore, I/we direct Global Client Solutions to release the funds from my/our Special Purpose Savings Account to the creditor, per the terms of a settlement agreement negotiated in accordance with the terms of this authorization.

This form may be revoked** by Client at any time upon written notice to Option 1.



| SIGN HERE | Signature of Client | Date 5-11-19 |
| SIGN HERE | Signature of Co-Client | Date |

*Reasonable efforts can include phone call(s), email(s), fax(es), and standard mail.

**Client can revoke such authorization at any time before any settlement payments are processed.